Mark E. Ferrario, Esq.
Nevada Bar No. 1625
Christopher Miltenberger, Esq.
Nevada Bar No. 10153
Alayne Opie, Esq.
Nevada Bar No. 12623
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

I. Scott Bogatz, Esq.
Nevada Bar No. 3367
Jaimie Stilz, Esq.
Nevada Bar No. 13772
Reid Rubinstein & Bogatz
3883 Howard Hughes Parkway, Suite 790
Las Vegas, Nevada 89169
Telephone: (702) 776-7000
Facsimile: (702) 776-7900
sbogatz@rrblf.com
jstilz@rrblf.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHERIF W. ABDOU, M.D. and AMIR S. BACCHUS, M.D. <br><br> Plaintiffs, <br><br> v. <br><br> DAVITA INC., HEALTHCARE PARTNERS HOLDINGS, LLC, and HEALTHCARE PARTNERS, LLC <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

COME NOW Plaintiffs SHERIF W. ABDOU, M.D. and AMIR S. BACCHUS, M.D., by and through their counsel the law firm of Greenberg Traurig, LLP, and for their Complaint for Declaratory Relief against Defendants DAVITA, INC., HEALTHCARE PARTNERS

LV 420816401v1

HOLDINGS, LLC, and HEALTHCARE PARTNERS, LLC, hereby allege and complain as follows:

## PARTIES

1. Plaintiff Sherif W. Abdou, M.D., an individual, is a resident of Nevada, and a Board Certified Internal Medicine Doctor.

2. Plaintiff Amir S. Bacchus, M.D., an individual, is a resident of Nevada, and a Board Certified Internal Medicine Doctor.

3. Defendant DaVita Inc. ("DaVita") is a Delaware corporation with its principal place of business located in Denver, Colorado.

4. Defendant Healthcare Partners Holdings, LLC ("HCPH") is a California limited liability company.

5. Defendant Healthcare Partners, LLC ("HCP") is a California limited liability company.

6. DaVita, HCPH, and HCP are collectively referred to herein as the "Defendants."

## JURISDICTION AND VENUE

7. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

8. This Court has jurisdiction to render declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events giving rise to the instant claim occurred in Las Vegas, Nevada.

10. Pursuant to the terms of the 2012 Agreement (identified below), the parties stipulated that the terms of the Agreement shall be governed by, and construed in accordance with the laws of the State of Nevada, and all actions arising out of or relating to the 2012 Agreement shall be heard and determined exclusively in any federal court sitting in the city of Las Vegas, Nevada.

## GENERAL ALLEGATIONS

11. Between 1994 and 1999, Sherif W. Abdou, M.D. ("Dr. Abdou") and Amir S. Bacchus, M.D. ("Dr. Bacchus," together with Dr. Abdou, the "Doctors") began creating a successful, independent physician association in Clark County, Nevada that ultimately took on the name Pinnacle Health System.

12. In or around June 2006, JSA Healthcare, LLC ("JSA") acquired Pinnacle Health System.

13. Thereafter, the Doctors continued to work for JSA and to develop the Pinnacle Health System pursuant to separate employment agreements they entered into with JSA.

14. On November 1, 2006, HealthCare Partners, LLC ("HCP") acquired JSA and its affiliates, including Pinnacle Health System. JSA continued to operate as a wholly owned subsidiary of HealthCare Partners Holdings, LLC ("HCPH").

15. On July 1, 2010, the Doctors' existing employment contracts were subject to renewal and the Doctors entered into separate employment agreements with JSA Healthcare Nevada, L.L.C. ("JSA Nevada") (the "2010 Employment Agreements").

16. In or around early 2012, Defendant DaVita Inc. ("DaVita") was exploring a merger transaction with HCPH.

17. In late February or early March 2012, the Doctors were told that JSA was taking the position that the time period for the Doctors to exercise the warrants they acquired as part of the prior JSA transaction had allegedly lapsed. As a result, the Doctors initiated a lawsuit against HCPH and JSA relating to the warrant dispute (the "Warrant Lawsuit").

18. After filing the Warrant Lawsuit, HCPH and JSA engaged the Doctors in settlement discussions.

19. In light of its ongoing discussions regarding a potential merger with HCPH, DaVita inserted itself into the settlement discussions concerning the Warrant Lawsuit.

20. On or about May 20, 2012, the Doctors entered into settlement agreements with JSA Nevada resolving the Warrant Lawsuit (the "Settlement Agreements").

*LV 420816401v1*

21. Pursuant to the Settlement Agreements, each of the Doctors were entitled to various payments as contemplated therein. The Doctors ultimately did not receive a substantial portion of the payments contemplated by the Settlement Agreements.

22. In connection with the Settlement Agreements, the Doctors also executed a series of other agreements governing their relationships with HCP, HCPH, and/or DaVita moving forward, including amendments to their existing employment agreements and noncompetition and nonsolicitation agreements.

### The 2012 Employment Noncompetes

23. In connection with the execution of the Settlement Agreements, the Doctors, as Employees, HCPH, as the Company, and DaVita, as the "Parent" to the Company, entered into certain Employee Noncompetition and Nonsolicitation Agreements (the "2012 Employment Noncompetes").

24. The 2012 Employment Noncompetes sought to prohibit the Doctors from engaging in broad categories of "Restricted Business," as defined in the agreements, for a period of two years after the Doctors' termination of employment with the Company in certain geographical locations.

25. The 2012 Employment Noncompetes defined the "Restricted Business" that HCPH and DaVita sought to restrict the Doctors from engaging for a period of two years after their separation from the company in, among other things, any of the following capacities:

(i) Physician practices, independent physician associations or any other form of practicing physician organization;

(ii) organizations engaged in coordinated care, managed care, accountable care, and other similar models of care for a population of patients;

(iii) organizations which provide management or related services to organizations described in (i) or (ii);

(iv) hospitals, ACOs, ancillary service providers, HMOs or other licensed health plans, but only insofar as [the Doctors'] role (A) would include activities on behalf of such organization described in (i), (ii), or (iii), including but not limited to, having direct responsibility for or having direct influence in setting up, running, managing, or controlling a provider network; or (B) would include engaging in direct negotiations or

*LV 420816401v1*

        consulting on negotiations on behalf of such organization with [DaVITA] or its subsidiaries (including [HCPH]);

(v)    Dialysis Services or Renal Care Services (as defined herein), except to the extent that such services are only an incidental part of the services provided by the organization for which [the Doctors are] providing services…

(vi)    researching, developing, marketing, or working on any products or providing any services, including direct primary care services, for a direct competitor of Direct Primary Care Holdings, LLC dba Paladina Health, or any of its subsidiaries. Direct competitors are those entities providing comprehensive primary healthcare services to patients for a recurring fee rather than individually itemized fixed fees for service for primary care services; and/or

(vii)    assisting any third party to engage in (i) through (vi).

26. The 2012 Employment Noncompetes sought to restrain the Doctors from engaging in any of the Restricted Business "anywhere in Nevada, California, Florida, and New Mexico, which are the jurisdiction in which the Company conducts business or reasonably expects to conduct business within the next twelve (12) months."

27. DaVita acknowledged in the 2012 Employment Noncompetes that the scope of the Restricted Business, Restricted Period and the Restricted Region contemplated by those agreements was "fair, reasonable and necessary for the protection of the legitimate business interests of [DaVita] or its Subsidiaries (including [HCPH]), including the protections of the goodwill transferred pursuant to the Merger Agreement[.]"

28. The 2012 Employment Noncompetes are governed by Nevada law.

29. The Doctors were terminated by Defendants on February 27, 2015.

30. Therefore, the restrictions set forth in the 2012 Employment Noncompetes will expire no later than February 27, 2017.

31. The Doctors have contested the reasonableness and enforceability of the 2012 Employment Noncompetes as part of a separate arbitration proceeding currently pending between the Doctors, Defendants, and certain other parties.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420816401v1

**The 2012 Settlement Noncompetes**

32. In addition to the 2012 Employment Noncompetes, the Doctors and DaVita entered into additional noncompetition and nonsolicitation agreements in connection with the Settlement Agreement (the "2012 Settlement Noncompetes"). True and correct copies of the 2012 Settlement Noncompetes are attached hereto as **Exhibit 1** (as to Dr. Abdou) and **Exhibit 2** (as to Dr. Bacchus).

33. The 2012 Settlement Noncompetes again sought to prohibit the Doctors from engaging in broad categories of "Restricted Business" as defined therein. The "Restricted Business" restrained by the 2012 Settlement Noncompetes was identical to the scope of the Restricted Business restrained by way of the 2012 Employment Noncompetes.

34. Specifically, the 2012 Settlement Noncompetes sought to prohibit the Doctors from engaging in any of the following lines of work during the Restricted Period set forth in those agreements:

(i) Physician practices, independent physician associations or any other form of practicing physician organization;

(ii) organizations engaged in coordinated care, managed care, accountable care, and other similar models of care for a population of patients;

(iii) organizations which provide management or related services to organizations described in (i) or (ii);

(iv) hospitals, ACOs, ancillary service providers, HMOs or other licensed health plans, but only insofar as [the Doctors'] role (A) would include activities on behalf of such organization described in (i), (ii), or (iii), including but not limited to, having direct responsibility for or having direct influence in setting up, running, managing, or controlling a provider network; or (B) would include engaging in direct negotiations or consulting on negotiations on behalf of such organization with [DaVITA] or its subsidiaries (including [HCPH]);

(v) Dialysis Services or Renal Care Services (as defined herein), except to the extent that such services are only an incidental part of the services provided by the organization for which [the Doctors are] providing services…

(vi) researching, developing, marketing, or working on any products or providing any services, including direct primary care services, for a direct competitor of Direct Primary Care Holdings, LLC dba Paladina Health, or any of its subsidiaries. Direct competitors are those entities providing

*LV 420816401v1*

comprehensive primary healthcare services to patients for a recurring fee rather than individually itemized fixed fees for service for primary care services; and/or

(vii)   assisting any third party to engage in (i) through (vi).

35. In addition to seeking to restrain the Doctors from engaging in the same scope of work as the 2012 Employment Noncompetes, the 2012 Settlement Noncompetes sought to restrain the Doctors from engaging in any of the Restricted Business within the same Restricted Region contemplated by the employment noncompetes.

36. Specifically, the 2012 Settlement Noncompetes sought to restrain the Doctors from engaging in any of the Restricted Business "anywhere in Nevada, California, Florida, and New Mexico…" which Defendants' claimed were "the jurisdiction in which the Company conducts business or reasonably expects to conduct business within the next twelve (12) months."

37. The substantive difference between the 2012 Settlement Noncompetes and the 2012 Employment Noncompetes is that the Settlement Noncompetes sought to restrain the Doctors from conducting business for a longer period of time.

38. The 2012 Settlement Noncompetes sought to prevent the Doctors from engaging in any of the Restricted Business "[d]uring the five (5) years from and after the" closing of the merger between DaVita and HCPH.

39. The Restricted Business contemplated by the 2012 Settlement Noncompetes is unreasonable and otherwise unnecessary to protect the Defendants' legitimate business interests and goodwill.

40. The Restricted Region contemplated by the 2012 Settlement Noncompetes is unreasonable and otherwise unnecessary to protect the Defendants' legitimate business interests and goodwill.

41. The Restricted Period contemplated by the 2012 Settlement Noncompetes is unreasonable and otherwise unnecessary to protect the Defendants' legitimate business interests and goodwill.

LV 420816401v1

42. The DaVita-HCPH merger closed on November 1, 2012.

43. The Defendants contend that the 2012 Settlement Noncompetes are valid, enforceable, and reasonable such that the Doctors should be restrained from engaging in any of the Restricted Business contemplated therein through November 1, 2017.

44. The 2012 Settlement Noncompetes are governed by Nevada law.

45. The 2012 Settlement Noncompetes provided that "[a]ll Actions arising out of or relating to this Agreement shall be heard and determined exclusively in any federal court sitting in the city of Las Vegas, Nevada" except for circumstances that are not present with the instant dispute.

### The 2014 Employment Noncompetes

46. On April 25, 2014, the Doctors entered into new employment agreements with HCP, as Employer, and DaVita HealthCare Partners Inc., as Parent to HCP.

47. In connection with those employment agreements, the Doctors entered into new noncompetition, nonsolicitation, and confidentiality agreements with HCP and DaVita HealthCare Partners Inc. (the "2014 Employment Noncompetes").

48. Pursuant to the terms of employment agreements entered into by and between the Doctors and DaVita, and HCPH, on or about April 25, 2014, the 2012 Settlement Noncompetes remained in effect despite the parties entering into the 2014 Employment Noncompetes.

49. The 2014 Employment Noncompetes sought to restrain them from engaging in substantially the same broad Restricted Business as was sought to be restrained by the 2012 Employment Noncompetes and the 2012 Settlement Noncompetes.

50. The 2014 Employment Noncompetes sought to expand upon the Restricted Region beyond the states identified in the 2012 Employment Noncompetes and Settlement Noncompetes.

51. The 2014 Employment Noncompetes sought to restrain the Doctors from engaging in any of the Restricted Business "during the two (2) years from and after the termination of Employee's employment with Employer for any reason[.]"

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV 420816401v1

52. Defendants claimed as part of the 2014 Employment Noncompetes that the Restricted Business and Restricted Period contemplated by those agreements was what was fair, reasonable and necessary to protect their legitimate business interests, including that of its subsidiaries, including the protection of their goodwill.

53. The Doctors were terminated by Defendants on February 27, 2015.

54. Therefore, the restrictions set forth in the 2014 Employment Noncompetes will expire no later than February 27, 2017.

55. The Doctors have contested the reasonableness and enforceability of the 2014 Employment Noncompetes as part of a separate arbitration proceeding currently pending between the Doctors, Defendants, and certain other parties.

**The 2012 Settlement Noncompetes are Unreasonable and Unenforceable**

56. The noncompetition covenant within the 2012 Employment Noncompetes and 2014 Employment Noncompetes purport to restrict the Doctors from engaging in certain restricted acts for a period of two years post-employment, as opposed to the five years referenced in the 2012 Settlement Noncompetes.

57. By the terms of the 2012 Employment Noncompetes and 2014 Employment Noncompetes, Defendants claimed that the duration of the noncompetition covenant, *i.e.* two years after termination, was "reasonable and necessary for the protection of the legitimate business interests of [DaVita], and its subsidiaries (including [HCP])."

58. Accordingly, noncompetition covenants lasting longer in duration than two years after the Doctors' termination from Defendants' employ (February 27, 2017) are unreasonable and unnecessary to protect Defendants' legitimate business interests.

59. Nonetheless, Defendants seek to restrain the Doctors from engaging in broad types of business until November 1, 2017 pursuant to 2012 Settlement Noncompetes.

60. Under the terms of the 2012 agreements, the Doctors are prohibited from working in all facilities within their chosen specialty. Notably, the Doctors are prohibited from working in any physician practice unless they do so as an individual with no other affiliation whatsoever.

LV 420816401v1

61. In a Memorandum dated February 27, 2015, DaVita and HCP made the Doctors' termination of employment public. Therein, DaVita and HCP stated they "fully support [the Doctors] as they move forward to build a new company that will help fee-for-service organizations and medical groups outside of Nevada and Arizona transition from volume to value-based reimbursement."

62. Yet, the terms of the 2012 Settlement Noncompetes seek to restrict the Doctors from engaging in Restricted Business within Nevada, California, Florida, and New Mexico.

63. Defendants omitted California, Florida and New Mexico from the February 27, 2015 Memorandum. As such, Defendants have acknowledged that they have authorized the Doctors to engage in Restricted Business within these states.

64. By the terms of the Memorandum, Defendants concede they have no protectable interest in California, Florida and New Mexico as it relates to the Doctors.

65. Nevada law provides that a restraint of trade is unreasonable when it is greater than what is required for the protection of the person for whose benefit the restraint is imposed or if it imposes an undue hardship upon the person restricted.

66. Nevada law requires noncompetition agreements to be subject to a strict test for reasonableness.

67. Under Nevada law, if noncompete agreements are unreasonable in any way, then the noncompete is unenforceable.

68. Noncompete agreements are not subject to being "reformed" or "blue penciled" as a matter of Nevada law.

69. The 2012 Settlement Noncompetes are greater than what is required to protect the Defendants' legitimate interests.

70. The 2012 Settlement Noncompetes impose an undue hardship on the Doctors.

71. As a result, the 2012 Settlement Noncompetes are unenforceable.

72. Based on the foregoing, the Doctors are entitled to a declaratory judgment from this Court that the 2012 Settlement Noncompetes are void and unenforceable.

*LV 420816401v1*

### FIRST CLAIM FOR RELIEF
### Declaratory Judgment

73. The preceding allegations are hereby re-alleged and incorporated herein by this reference.

74. This action presents a justiciable controversy related to enforceability and validity of the 2012 Settlement Noncompetes.

75. The Doctors contend that the 2012 Settlement Noncompetes are unreasonable and seek to impose an undue burden on their future business endeavors.

76. Defendants contend that the 2012 Settlement Noncompetes are reasonable and enforceable such that the Doctors cannot engage in any of the broad categories of Restricted Business set forth therein until on or after November 1, 2017.

77. The interests of the Doctors and the Defendants with respect to the enforceability of the 2012 Settlement Noncompetes are adverse.

78. There exists between the Doctors and DaVita, HCPH and HCP a justiciable controversy related to the 2012 Settlement Noncompetes.

79. This Court is authorized to grant a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, as implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

80. Further, pursuant to Nevada Revised Statute § 30.040, any person interested or whose rights, status or other legal relations are affected by a contract may have determined any question of construction or validity arising under that contract by obtaining a declaration of rights, status or other legal relations thereunder.

81. The Doctors assert a legally protectable interest that is ripe for determination with respect to the 2012 Settlement Noncompetes.

82. The Doctors seek declaratory judgment finding that the 2012 Settlement Noncompetes are unreasonable and as a result, void and unenforceable.

LV 420816401v1

83. The Doctors seek injunctive relief preventing the Defendants from seeking to enforce the terms of the 2012 Settlement Noncompetes or informing any third parties of the purported restrictions set forth in those agreements.

84. If the 2012 Settlement Noncompetes are enforced as broadly as Defendants contend they should be, the Doctors will suffer harm well in excess of $75,000 as a result of the work they will be prohibited from performing during the Restricted Period.

85. In order to pursue their claims as a direct and proximate result of Defendants' conduct outlined herein, the Doctors have incurred attorneys fees as special damages in the sum to be determined.

///
///
///

*LV 420816401v1*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs SHERIF W. ABDOU, M.D. and AMIR S. BACCHUS, M.D pray for judgment against Defendants DaVita, HCPH and HCP as follows:

1. For a declaration that the 2012 Settlement Noncompetes are unreasonable, and as a result, void and unenforceable.

2. For injunctive relief preventing any of the Defendants, or anyone acting in concert with them, from seeking to enforce the terms of the 2012 Settlement Noncompetes or informing any third parties of the purported restrictions set forth in those agreements.

3. For an award of reasonable attorneys fees and costs of suit as special damages; and

4. For any further relief as the Court deems to be just and proper.

DATED this 8th day of November, 2016.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Mark E. Ferrario*
MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
CHRISTOPHER MILTENBERGER, ESQ.
Nevada Bar No. 10153
ALAYNE OPIE, ESQ.
Nevada Bar No. 12623
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169

I. SCOTT BOGATZ, ESQ.
Nevada Bar No. 3367
JAIMIE STILZ, ESQ.
Nevada Bar No. 13772
REID RUBINSTEIN & BOGATZ
3883 Howard Hughes Parkway, Suite 790
Las Vegas, Nevada 89169

*Counsel for Plaintiffs*

LV 420816401v1