UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

SHERIF W. ABDOU, M.D. and AMIR S. BACCHUS, M.D.,

Plaintiffs,

v.

DAVITA INC., HEALTHCARE PARTNERS HOLDINGS, LLC, and HEALTHCARE PARTNERS, LLC,

Defendants.

AND RELATED CLAIMS.

Case No. 2:16-cv-02597-APG-CWH

**PRELIMINARY INJUNCTION**

(ECF Nos. 64/66)

The Motion for Preliminary Injunction ("Motion for TRO") filed by defendants DaVita Inc. f/k/a DaVita HealthCare Partners Inc. ("DaVita"); Healthcare Partners Holdings, LLC ("HCP Holdings"); and DaVita Medical Nevada, LLC, f/k/a Healthcare Partners, LLC ("HCP") (collectively, the "DaVita Parties") came on for hearing on November 17, 2017.

**FINDINGS OF FACT**

Having considered the parties' briefs, the records and documents on file, and the arguments of counsel, I make the following preliminary findings of fact:

1. In early 2012, DaVita and HCP entered into negotiations regarding a potential merger of the companies (the "Merger").

2. On March 16, 2012, Abdou/Bacchus sued HCP Holdings and JSA Healthcare Nevada, LLC ("JSA Nevada"), a subsidiary of the DaVita Parties.

3. On May 20, 2012, JSA Nevada and Abdou/Bacchus entered into settlement agreements (the "2012 Settlement Agreements").

4. Pursuant to the 2012 Settlement Agreements, Abdou/Bacchus: (i) received substantial compensation; (ii) entered into amendments to their Employment Agreements; (iii) agreed to

covenants not to compete ancillary to their employment; and (iv) agreed to covenants not to compete ancillary to the transfer of their ownership interests in HCP Holdings in connection with the Merger (the "Sale Noncompetes").

5. Abdou/Bacchus received $15 million in compensation pursuant to the 2012 Settlement Agreements. Specifically, each Plaintiff received a "Merger Transaction Settlement Payment"—Dr. Abdou received $6 million and Dr. Bacchus received $4 million. Further, Dr. Abdou received $3 million and Dr. Bacchus received $2 million as specific consideration for the Sale Noncompetes.

6. On May 20, 2012, Abdou/Bacchus and DaVita entered into the Sale Noncompetes.

7. Abdou/Bacchus were represented by legal counsel in negotiating the 2012 Settlement Agreements and the Sale Noncompetes.

8. In entering into the Sale Noncompetes, Abdou/Bacchus expressly acknowledged that:

    a. They were selling their ownership interest in HCP Holdings as part of the Merger transaction;

    b. The Sale Noncompetes were a condition precedent to the Merger, "a material inducement to [DaVita] to consummate the transactions contemplated in the Merger Agreement," and that DaVita "would be unwilling to consummate such transactions if [Abdou/Bacchus] did not enter into [the Sale Noncompetes][;]"

    c. The Sale Noncompetes were necessary to protect the benefits and value that DaVita would acquire through the Merger. Specifically, Abdou/Bacchus expressly acknowledged that, "due to [their] affiliation with [HCP Holdings]," they had "acquired intimate knowledge of, and experience related to, the business of the [HCP Holdings] and [DaVita], which, if exploited by [Abdou/Bacchus] in contravention of this Agreement, would seriously, adversely and irreparably affect the ability of [DaVita] and its Affiliates . . . to derive the benefit or value for which it bargained in the Merger Agreement."

    d. That any breach of the Sale Noncompetes "would cause irreparable injury to" DaVita and its subsidiaries and that they "shall be entitled to enforce" the Sale Noncompetes "by

demanding specific performance and immediate injunctive relief as remedies for such breach or any threatened breach."

9. The Sale Noncompetes expressly prohibit Abdou/Bacchus from "directly or indirectly" engaging in or preparing to engage in (or having any interest in, or providing any assistance to, any entity or group that is engaging in or preparing to engage in) a "Restricted Business" in Nevada, California, Florida, or New Mexico (the "Restricted Region") for five (5) years from the closing date of the Merger (the "Restricted Period"). The Restricted Region is composed of states where the DaVita Parties continue to conduct their business operations.

10. Under the Sale Noncompetes, "Restricted Business" is defined to capture the type of services which Abdou/Bacchus provided to HCP—management of physician practices and organizations involved in population health management services, including:

    a. "Physician practices, independent physician associations or any other form of practicing physician organization;"

    b. "[O]rganizations engaged in coordinated care, managed care, accountable care and other similar models of care for a population of patients; ["Population Health Management"];"

    c. "[O]rganizations which provide management or related services to organizations described in [(a) or (b)];"

    d. "[H]ospitals, [Accountable Care Organizations], HMOs or other licensed health plans, but only insofar as [Abdou/Bacchus's] role (A) would include activities on behalf of such organizations described in [(a), (b), or (c)], including, but not limited to, having direct responsibility for or having direct influence in setting up, running, management or controlling a provider network; or (B) would include engaging in direct negotiations or consulting on negotiations on behalf of such organization with [DaVita] or its Subsidiaries . . . .;" and

    e. "[A]ssisting any third party to engage in [(a)] through (d)]."

11. The Sale Noncompetes expressly allow each Plaintiff to "personally [practice] medicine as a physician" and leave open many other types of work in the healthcare field.

12. The Sale Noncompetes contain a tolling provision that provides "the Restricted Period shall be tolled during any period that [Abdou/Bacchus are] in breach of the terms of" the Sale Noncompetes.

13. The closing date of the Merger was November 1, 2012. Accordingly, in the absence of any violations, the Sale Noncompetes would have expired on their own terms on November 1, 2017.

14. Some of the documents produced in discovery by Abdou/Bacchus on October 16, 2017 (the "Abdou/Bacchus Documents")[1] indicate that Abdou/Bacchus personally and through the companies that they own and control—P3 Health Group Holdings, LLC; P3 Health Group LLC; P3 Health Group Management, LLC; and P3 Health Partners (collectively, "P3 Health")—participated in meetings, discussions, negotiations, and strategy sessions with Anthem Inc. ("Anthem"), Humana Inc. ("Humana"), and Universal Health Services, Inc. ("UHS") from as early as January 15, 2016 through at least August 9, 2017, to engage in a Restricted Business in Nevada (a Restricted Region), including specific discussions and strategy sessions on actions that could be taken to adversely affect and displace the DaVita Parties' business operations in the Nevada healthcare market.

15. The DaVita Parties filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") on October 24, 2017; Abdou/Bacchus filed their response on October 29, 2017; and the DaVita Parties submitted their reply in support of the Motion for TRO on October 31, 2017. I held a hearing on October 31, 2017. ECF No. 76. I granted the motion for a temporary restraining order and set the matter for further hearing. *Id.*; ECF No. 84.

## **CONCLUSIONS OF LAW**

1. "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Temporary restraining

---

[1] *See* ECF Nos. 67-2 through 67-9.

orders are governed by the same standard applicable to preliminary injunctions." *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010).

    2.    The DaVita Parties have demonstrated a likelihood of success on the merits. I preliminarily find that Abdou/Bacchus engaged in a Restricted Business in the Restricted Region during the Restricted Period based on their activities with Anthem, Humana, and UHS (as evidenced by the Abdou/Bacchus Documents), which constitutes a breach of the Sale Noncompetes.

    3.    The DaVita Parties are likely to suffer irreparable harm unless a temporary restraining order issues.

        a.    Abdou/Bacchus expressly recognized that, "due to [their] affiliation with" HCP, they "acquired intimate knowledge of, and experience related to, the business of [HCP Holdings] and [DaVita] which, if exploited by [Abdou/Bacchus] in contravention of the [Sale Noncompetes], would seriously, adversely, and irreparably affect the ability of [DaVita] and its Affiliates . . . to derive the benefit or value for which it bargained in the Merger Agreement."

        b.    Abdou/Bacchus expressly agreed that any breach of the Sale Noncompetes "would cause irreparable injury" to DaVita and their subsidiaries (including HCP) and would entitle them to "immediate injunctive relief as remedies for such breach . . . ."

        c.    The goodwill paid for by the DaVita Parties was a material and important aspect of the Merger, and they are entitled to the protections of the Sale Noncompetes for the Restricted Period. Allowing Abdou/Bacchus to exploit information, experience, and relationships they obtained while they were executives at HCP (e.g. relationships with Anthem, Humana, and UHS) during the Restricted Period deprives the DaVita Parties of the opportunity to build and maintain such relationships with those third parties (such as Anthem, Humana, and UHS) and interferes with the DaVita Parties' relationships with third parties—damaging the goodwill for which the DaVita Parties paid Abdou/Bacchus substantial consideration in the Merger.

        d.    There is circumstantial evidence of actual disruption of one of the DaVita Parties' existing contractual relationships.

    4.    The balance of the equities tilts in favor of the DaVita Parties. In the absence of injunctive relief, the DaVita Parties will suffer irreparable harm. Conversely, Abdou/Bacchus will

not suffer irreparable harm in being forced to comply with their contractual obligations, particularly given the narrowed parameters of the preliminary injunction's scope.

5. Enforcing the Sale Noncompetes within the narrowly tailored parameters set forth below is in the public interest as the public has an interest in protecting the freedom of persons to contract.

6. As Abdou/Bacchus have not argued or presented evidence that they will suffer harm if improperly enjoined, no bond is necessary.

**ORDER**

1. IT IS HEREBY ORDERED that the Motion for Preliminary Injunction **(ECF No. 64/66) is GRANTED**, and that a Preliminary Injunction shall issue in favor of the DaVita Parties.

2. IT IS FURTHER ORDERED that Abdou/Bacchus as well as their officers, directors, agents, servants, employees, attorneys, and those persons in concert or participation with them who receive actual notice of this Temporary Restraining Order by personal service or otherwise, are hereby enjoined from engaging in any of the following activities insofar as such activities are done in connection with or otherwise relate, directly or indirectly, to Anthem, Humana, or UHS (or any of their affiliates, agents, employees, or subsidiaries; e.g. Prominence Health Plan):

- Take any action that results or may reasonably be expected to result in owning, leasing, managing, operating, joining, extending credit to, controlling or participating in the ownership, leasing, management, operation, extension of credit to, or control of, whether as an employer, shareholder, employee, director, manager, lender, joint venture, member, consultant, advisor or partners, whether or not compensated for any of the foregoing, with any business that, directly or indirectly anywhere within Nevada, engages in or derives any economic benefit from, or is preparing to engage in or service any economic benefit from, the Restricted Business (as defined below); or

- For his own account or for the account of others, own, manage, operate, join, control or participate in the ownership, management, operation or control of, or be connected as an employer, shareholder, employee, director, manager, lender, joint venture, member, consultant, advisor or partner, whether or not compensated for any of the foregoing, with any

business that, directly or indirectly anywhere within Nevada engages in, or takes affirmative action to prepare to engage in or device economic benefit from, the Restricted Business.

- "Restricted Business" means any of the following:
    i. Physician practices, independent physician association or any other form of practicing physician organization;
    ii. organizations engaged in coordinated care, managed care, accountable care and other similar models of care for a population of patients;
    iii. organizations which provide management or related services to organizations described in (i) or (ii);
    iv. hospitals, ACOs, ancillary service providers, HMOs or other licensed health plans, but only insofar as Abdou/Bacchus's role (A) would include activities on behalf of such organization described in (i), (ii), or (iii), including but not limited to, having direct responsibility for or having direct influence in setting up, running, managing or controlling a provider network; or (B) would include engaging in direct negotiations or consulting on negotiations on behalf of such organization with Davita or its Subsidiaries (including HCP Holdings);
    v. Dialysis Services or Renal Care Services (as defined herein), except to the extent that such services are only an incidental part of the services provided by the organization for which Abdou/Bacchus is providing services. "Dialysis Services or Renal Care Services" shall mean all dialysis services and nephrology-related services provided by Davita at any time during the period of Abdou/Bacchus' employment, including, but not limited to, hemodialysis, home hemodialysis, dialysis-related laboratory and pharmacy services, access-related services, drug purchasing, drug distribution, Method II dialysis supplies and services, nephrology practice management, vascular services, disease management services, pre-dialysis education, ckd services, or renal physician/dent network management, and any other services of treatment for persons diagnosed as having end state renal disease or pre-end stage renal disease, including any dialysis services provided in an acute hospital;

  vi. researching, developing, marketing, or working on any products or providing any services, including direct primary care services, for a direct competitor of Direct Primary Care Holdings, LLC dba Paladina Health, or any of its subsidiaries. Direct competitors are those entities providing comprehensive primary healthcare services to patients for a recurring fee rather than individually itemized fixed fees for services for primary care services; and/or

  vii. assisting any third party engage in (i) through (vi).

  Notwithstanding the foregoing, nothing herein shall prohibit Abdou/Bacchus from personally practicing medicine as a physician.

  3. IT IS FURTHER ORDERED that this Preliminary Injunction shall expire twenty-two months from November 1, 2017, unless otherwise modified by this Court.

_____
UNITED STATES DISTRICT JUDGE

Dated this 17th day of November